IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALIMA BAHSHOOTA, <br><br> Plaintiff, <br><br> vs. <br><br> NELNET, INC., <br><br> Defendant. | 8:19CV133 <br><br> MEMORANDUM AND ORDER |

Plaintiff filed her Complaint in this matter on March 28, 2019. (Filing No. 1.) Plaintiff has been given leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I.   SUMMARY OF COMPLAINT

Plaintiff seeks damages against her former employer, Nelnet, Inc. ("Defendant"), and claims Defendant discriminated against her on the basis of race, color, and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101–1126. (*See generally* Filing No. 1.) No supporting facts are alleged in Plaintiff's standard form "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)," but Plaintiff has attached and specifically referenced the charge of discrimination she filed with the Nebraska Equal Opportunity Commission ("NEOC") and Equal Employment Opportunity Commission ("EEOC") on December 4, 2017, and an "Attached Statement Amending the EEOC/Nebraska Equal Opportunity Commission Charge of Discrimination" (hereinafter "Statement"). (*Id.* at CM/ECF pp. 4, 7–11.) In assessing Plaintiff's Complaint, the court will consider the allegations raised in

Plaintiff's EEOC charge of discrimination, as well as those raised in the Statement. *See Coleman v. Correct Care Solutions*, 559 Fed. App'x. 601, 602 (8th Cir. 2014).

Plaintiff's charge of discrimination sets out the following particulars:

I am African-American and Female. I worked for the Respondent beginning February 15, 2015, most recently as an Advisor I. . . .

1. During my employment, I was subjected to different terms and conditions of employment by my supervisor, Christopher Novich (Non African-American) and Lead Kevin Sadler (Non African-American). Mr. Novich and Mr. Sadler constantly accused me of having an attitude. When Mr. Novich or Mr. Sadler spoke to me they would use African-American slang to do so. This treatment continued throughout my employment, and Mr. Novich and Mr. Sadler treated other female, African-American employees in this manner as well, including Megan Stratten, Rochelle Walker, and Natalia Thomas.

2. In January 2017, I reported this treatment to Candy Cartwright (Non African-American, Female, Head of Customer Service) when I was complaining about a previous disciplinary action I had received on January 10, 2017.

3. On June 22, 2017, Mr. Novich terminated my employment, allegedly for being abrasive and aggressive to a customer, which I deny. Respondent's policy stated that a person was supposed to receive a verbal, written, and final warning before termination, however, I had only received a final warning. Other employees were belligerent and rude to customers, including Patricia (Last Name Unknown-LNUK, Non African-American, Help Desk Advisor II), Tim LNUK (Non African-American, Advisor I), and Daniel LNUK (Non African-American, Advisor I), but they were only disciplined, and not terminated.

4. My performance to date was satisfactory.

(Filing No. 1 at CM/ECF p. 9.)

In her attached Statement, Plaintiff indicates she is amending the charge of discrimination to add the following claims against Defendant:

1. Gross Negligence of reported incident and complaints by:

   1. Reviewing phone calls I complained about, and finding me at fault for things I did not do, and not verifying correct procedure, before indicating I was erroneous in action.
   2. Not reviewing phone calls in detail, to find what I was reporting to be fair and true.
   3. By ignoring complaints of harassment and targeting and stating I was at fault for the harassment and targeting.
   4. Making false statements against my customer service skill, to give their selves, the ability to disregard the complaints, I submitted and voiced.
   5. To negate my importance and skill, making these statements to other supervisory staff.
   6. Indicating I was out of procedure, by neglecting and not acknowledging, I was factual and concise in giving information.
   7. Not following up with complaints against supervisory staff and then blaming me for not submitting documentation during work hours I was reprimanded for.

2. Subjection to Mental Abuse by:

   1. Nelnet intentionally and adamantly refused to all employees to transfer escalated call to supervisors, and insisted the Advisor I remain on the call, when it was beyond their control, until the customer was done escalating.
   2. Repetitiously telling me I was wrong in my educating borrowers when I was not.
   3. Making false statements about my reactions to reprimands.
   4. Submitting to EEOC to defame my character, that I never submitted any complaints, against staff or customer.

3. Tampering with Evidence by:

    1. Sending over altered phone calls, which drowned out what the caller was actually saying.
    2. Getting rid of phone calls that should have been filed as complaints, by an employee.
    3. Sending over false statements of disciplinary actions against other employees, to EEOC.

([Filing No. 1 at CM/ECF p. 11](#).)

Also attached to the Complaint is a right-to-sue letter that the EEOC issued on December 17, 2018. ([Filing No. 1 at CM/ECF p. 7](#).) Plaintiff filed a motion with her Complaint in which she requests "an extension of my Notice of Suit Rights within 90 Days due to a miscommunication between myself and the Clerk of the District Court[;] I submitted the Continuation of my EEOC claim and its Amendment in the wrong format." ([Filing No. 3](#).) Plaintiff is referring to a prior submission she made to the court on March 18, 2019, consisting of a copy of the Statement and the EEOC charge of discrimination, which the court returned to Plaintiff because the submission was not in the form required by Federal Rule of Civil Procedure 10 or the court's local rules and Plaintiff did not have a case pending in the court at that time. ([Filing No. 17](#), Case No. 4:19PS3000.) The court takes judicial notice of these records. *See [United States v. Jackson](#)*, 640 F.2d 614, 617 (8th Cir. 1981) (court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records).

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* [28 U.S.C. § 1915(e)](#). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. [28 U.S.C. § 1915(e)(2)(B)](#).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here seeks to assert claims for race and sex discrimination and retaliation. A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## III. DISCUSSION OF CLAIMS

**A. Timeliness**

As an initial matter, the court must address the question of whether Plaintiff's Complaint was timely filed. An aggrieved employee who files a charge with the EEOC has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on her charge.[1] 42 U.S.C.A. § 2000e-5(f)(1). The EEOC issued Plaintiff a right-to-sue letter on December 17, 2018. (Filing No. 1 at CM/ECF p. 7.) Presuming Plaintiff received the right-to-sue letter on December 20, 2018, the 90-day period for filing a complaint expired on March 20, 2019. *See* Fed.R.Civ.P. 6(d) ("When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), . . . 3 days are added after the period would otherwise expire under Rule 6(a)."). Plaintiff filed her Complaint in this court on March 28, 2019, eight days after the 90-day limitations period had expired. However, the 90-day limitations period in 42 U.S.C.A. § 2000e-5(f)(1) is not jurisdictional and is subject to equitable tolling. *Hill v. John Chezik Imports*, 869 F.2d 1122, 1123 (8th Cir. 1989) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

As the Eighth Circuit Court of Appeals has explained,

> As a general rule, equitable tolling is a remedy reserved for circumstances that are "truly beyond the control of the plaintiff." *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir.1989); *see also Lown v. Brimeyer*, 956 F.2d 780, 782 (8th Cir.) ("Equitable tolling is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his [or her] hands.") (quoting *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991)), *cert. denied, 506 U.S.*

---

[1] The NFEPA similarly provides that "[t]he deadline for filing an action directly in the district court is ninety days after the complainant receives notice of the last action the [NEOC] will take on the complaint or charge." Neb. Rev. Stat. § 48-1120.01.

> 860, 113 S.Ct. 176, 121 L.Ed.2d 122 (1992). *Baldwin* [*County Welcome Center v. Brown*, 466 U.S. 147 (1984)] suggests instances in which equitable tolling would be appropriate: (1) a claimant has received inadequate notice; (2) a motion for appointment of counsel is pending; (3) the court has led the plaintiff to believe that he or she has done everything required of him or her; or (4) affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. 466 U.S. at 151, 104 S.Ct. 1723.

*Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797–98 (8th Cir. 1998).

Here, Plaintiff filed a copy of the EEOC charge of discrimination, the right-to-sue letter, and her Statement with the clerk's office within the limitations period on March 18, 2019, which the court returned to Plaintiff because the submission was not in the proper form as required by the Federal Rules of Civil Procedure and the court's local rules. Plaintiff then filed her Complaint on March 28, 2019, including the same documents submitted on March 18, 2019, as well as a motion asking for an extension of the 90-day period for filing suit. In her motion, Plaintiff alleges there was "a miscommunication between [herself] and the Clerk of the District Court" and she "submitted the Continuation of [her] EEOC claim and it's Amendment in the wrong format." (Filing No. 3.) Liberally construing her pleadings, Plaintiff alleges she mistakenly submitted her EEOC right-to-sue letter, charge of discrimination, and Statement in the wrong format based on information received from the Clerk of the District Court. While the filing of a right-to-sue notice with a court, on its own, does not toll the 90-day limitations period, *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984), the court concludes that Plaintiff has alleged a basis for equitable tolling of the 90-day limitations period for purposes of this initial review, particularly given the liberal pleading standard applicable to pro se litigants' pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, the court will grant Plaintiff's motion for an extension only to the extent that the court will consider the allegations in the motion as supplemental to the Complaint and relevant to the issue of equitable tolling.

## B. Title VII and NFEPA

Plaintiff alleges discrimination and retaliation claims on the bases of race, color, and sex under Title VII and the NFEPA.

*1. Discrimination*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NFEPA is patterned after Title VII, and Nebraska courts have looked to federal decisions in analyzing claims brought under the Nebraska act. *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) ("We analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII.").

To state a prima facie claim of race or sex discrimination Plaintiff must allege facts showing that (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (race); *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (sex discrimination). "The required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019. (internal quotations and citations omitted).

Here, Plaintiff has alleged she is African-American and a woman, both protected classes for purposes of Title VII. *See, e.g.*, *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005) (recognizing African–Americans as a protected class

for Title VII purposes); *Tharp v. Iowa Dep't of Corr.*, 68 F.3d 223, 226 (8th Cir. 1995) (referring to the "protected class of women employees" in context of Title VII discussion). Plaintiff also alleged she suffered an adverse employment action (i.e. termination). Liberally construed, Plaintiff also alleged she met her employer's legitimate expectations. While Plaintiff alleged she was terminated "for being abrasive and aggressive to a customer," Plaintiff denied that she was and alleged her job performance was satisfactory for the two years she was employed by Defendant. (Filing No. 1 at CM/ECF p. 9.)

With respect to the fourth element, the court concludes that Plaintiff has plausibly alleged circumstances giving rise to an inference of discrimination based on race. Plaintiff alleged that the supervisor who terminated her spoke to her using "African-American slang" and that other non-African American employees who were also belligerent and rude to customers were only disciplined, not terminated. Plaintiff also alleges Defendant did not follow its normal discipline policy when it terminated Plaintiff after she only received a final warning, rather than a verbal, written, and final warning. Liberally construing Plaintiff's allegations, the court finds Plaintiff has stated a race-based employment discrimination claim upon which relief may be granted.[2] *See Wright v. First Student, Inc.*, 710 F.3d 782, 784 (8th Cir. 2013) (holding that, in light of the liberal construction afforded pro se complaints, employee stated an employment-discrimination claim where he alleged that employer gave a non-credible reason for firing him and the real reason was because he is African American, disabled, and over age 55).

However, the court cannot reasonably infer that circumstances exist that give rise to an inference of discrimination based on Plaintiff's sex, such as "more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019 (internal quotations and citations omitted). At least one of the employees who was allegedly

---

[2] The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

only disciplined rather than terminated for conduct similar to Plaintiff's is also a member of the protected class. Accordingly, Plaintiff has failed to state a sex-discrimination claim upon which relief may be granted.

*2. Retaliation*

Title VII also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

Here, Plaintiff alleges she reported her supervisors' use of African-American slang to the head of customer service in January 2017 when she was discussing a separate disciplinary action. Plaintiff's report of this treatment could constitute "protected activity" for purposes of Title VII, but there are no facts from which the court can reasonably infer a causal connection between Plaintiff's report and her termination five months later. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc); *see Kipp v. Missouri Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link."); *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (4-week interval between plaintiff's complaint of harassment and her layoff was insufficient to establish showing of causal connection, given that she missed many

10

days of work in the interval and the company was undergoing a period of layoffs). Thus, Plaintiff has failed to allege a plausible claim of retaliation under Title VII or NFEPA.

**C. Statement Amending EEOC Charge of Discrimination**

Plaintiff attached to her Complaint what she called a "Statement Amending the EEOC/Nebraska Equal Opportunity Commission Charge of Discrimination." ([Filing No. 1 at CM/ECF pp. 4](), [11]().) In the Statement, Plaintiff accuses Defendant of "Gross Negligence," "Subjection to Mental Abuse," and "Tampering with Evidence" with respect to Defendant's responses to and characterization of Plaintiff's job-related complaints and performance both while she was employed and in Defendant's presentation of evidence to the EEOC. (*Id.* [at CM/ECF p. 11]().)

The court has considered Plaintiff's Statement in assessing her employment discrimination claims but concludes that the allegations in the Statement, on their own, do not give rise to any reasonable inference of discrimination or retaliation based on race, color, or sex. Moreover, to the extent Plaintiff seeks to assert claims that were not included in the charge of discrimination filed with the EEOC, Plaintiff is precluded from doing so because she failed to exhaust her administrative remedies. *See [Malone v. Ameren UE,](..) 646 F.3d 512, 516 (8th Cir. 2011)* ("Before an employee may file a lawsuit in federal court, he must exhaust administrative remedies with the EEOC. The employee may not bring allegations in a Title VII action if they go beyond those that "could reasonably be expected to grow out of the charge of discrimination" filed with the EEOC." (internal citation omitted)).

Liberally construed, Plaintiff may seek to assert state law tort claims against Defendant. At this time, the court makes no finding with respect to its jurisdiction over these claims or whether they state a claim upon which relief may be granted. In order to ensure a just and fair resolution of this matter, Plaintiff's state-law

claims will be allowed to proceed to service of process against Defendant along with her Title VII race discrimination claim.

## IV. CONCLUSION

For purposes of initial review only, the court concludes that Plaintiff has sufficiently alleged that she is entitled to equitable tolling of the 90-day limitations period for filing Title VII claims. Liberally construed, Plaintiff's Complaint alleges a plausible employment discrimination claim based on race but fails to state a claim for discrimination based on sex or retaliation. Plaintiff's race-based discrimination claim will proceed to service of process along with Plaintiff's state law claims.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Extension ([filing no. 3](filing no. 3)) is granted to the extent the court will consider the allegations in the motion as supplemental to the Complaint. The clerk of the court is directed to add the following docket text to the already-existing text at Filing No. 3: "Court will consider Filing No. 3 supplemental to the Complaint (Filing No. 1)."

2. The following claims will be dismissed or proceed further as described below:

    a. Plaintiff's Title VII and NFEPA claims of sex-based discrimination are dismissed without prejudice for failure to state a claim.

    b. Plaintiff's Title VII and NFEPA claims of retaliation are dismissed without prejudice for failure to state a claim.

c. Plaintiff's Title VII and NFEPA claims of discrimination based on race may proceed to service of process.

d. Plaintiff's state law claims may proceed to service of process.

3. This matter may proceed to service of process against the Defendant Nelnet, Inc. To obtain service of process on the Defendant, Plaintiff must complete and return the summons form that the clerk of the court will provide. The clerk of the court shall send one summons form and one USM-285 form to plaintiff, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the clerk of the court. In the absence of the forms, service of process cannot occur.

4. Upon receipt of the completed forms, the clerk of the court will sign the summons forms and forward them together with a copy of the Complaint (filing no. 1), the Motion for Extension (filing no. 3), and a copy of this Memorandum and Order to the United States Marshals Service for service of process on the Defendant Nelnet, Inc. The Marshals Service shall serve the Defendant using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e), (h); Neb. Rev. Stat. § 25-509.01 (Reissue 2016).

5. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[3]

6. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However,

---

[3] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7. Plaintiff is hereby notified that failure to obtain service of process on the Defendant within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

8. The clerk of the court is directed to set a case management deadline in this case with the following text: **June 1, 2020**: service of process to be completed.

9. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of her current address at all times while this case is pending. Failure to do so may result in dismissal.

10. Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 3rd day of March, 2020.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge